# EXHIBIT A

Superior Court of California,
Sacramento
06/14/2024
fisherr
By _____, Deputy
24CV011792

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MOGINRUBIN LLP**
Daniel J. Mogin (SBN 95624)
Timothy Z. LaComb (SBN 314244)
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 687-6611
Facsimile: (619) 687-6610
dmogin@moginrubin.com
tlacomb@moginrubin.com

**SINGLETON SCHREIBER, LLP**
Andrew D. Bluth (SBN 232387)
Christopher R. Rodriguez (SBN 212274)
1414 K Street, Suite 470
Sacramento, CA 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515
crodriguez@singletonschreiber.com
abluth@singletonschreiber.com

*Attorneys for Plaintiffs*
(Additional Counsel on Signature Page)

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SACRAMENTO**

| | |
|---|---|
| LATASHA MIXON and ROSANA KORMAN, individually, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLSPACE HEALTH, a California corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br>(1) Violation California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*;<br>(2) Unjust Enrichment; and<br>(3) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*<br><br>**JURY TRIAL DEMANDED** |

BY FAX

CLASS ACTION COMPLAINT

Plaintiffs LATASHA MIXON and ROSANA KORMAN bring this class action complaint on behalf of themselves, and all others similarly situated (the "Class Members") against WELLSPACE HEALTH ("WellSpace"). The allegations contained herein are based on Plaintiffs' personal knowledge of facts pertaining to themselves and upon information and belief, including further investigation conducted by Plaintiffs' counsel.

## I.    SUMMARY OF THE CASE

1.    This is a class action lawsuit brought on behalf of all California residents whose communications were unlawfully intercepted by Google LLC ("Google") due to WellSpace's use of website tracking technology called "Google Analytics" on its website.

2.    WellSpace provides a full range of medical care, dental care, and mental health and behavioral health services. WellSpace offers several of these services through its interactive website, WellSpacehealth.org. On this website, users can do things like find doctors, schedule appointments, pay bills, search for resources by condition, and access their WellSpace Health Connect – Patient Portal.

3.    While utilizing many of these online services, users input private and medical information. Unknown to users, WellSpace has enabled Google to intercept much of this information by placing Google Analytics on its website. Google Analytics intercepts users' information in real time and redirects it to Google without users' consent.

4.    The information intercepted by Google includes: (i) types of treatment users are seeking; (ii) physicians with whom patients are seeking treatment; (iii) search queries from the website's internal search bar; and (iv) when a patient accesses the website's virtual appointment portal. In connection with this information, Google receives users' internet protocol addresses ("IP addresses"), allowing Google to connect the data to specific individuals.

5.    Google intercepts the information through Google Analytics the moment it is input. Google also designed Google Analytics to be invisible. And neither WellSpace nor Google obtains permission to intercept the information at issue here. Therefore, the interception occurs without explicit or implicit authorization.

6.    WellSpace and Google profit from this unlawful disclosure of data. In exchange

1    for its users' data, WellSpace receives analytics and other information from Google that enables

2    WellSpace to optimize its marketing, increasing revenue as a result. In exchange for its

3    analytics, Google receives confidential and highly valuable data for thousands of WellSpace

4    users, enabling Google to increase the value of its advertising profiles and services.

5          7.    While WellSpace receives significant benefits from the data interception at issue,

6    Plaintiffs and Class Members do not receive any compensation. This is true despite the fact

7    there is a robust market for their medical information, which is among the most valuable

8    information a person possesses.

9          8.    Through these unlawful actions, WellSpace has violated (and continues to

10   violate) California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, and California's

11   Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq. WellSpace has also

12   been unjustly enriched. These unlawful actions have harmed (and continue to harm) Plaintiffs

13   and Class Members, and Plaintiffs seek to remedy these harms through this action. Plaintiffs

14   seek statutory damages, compensatory damages, punitive damages, and injunctive relief to both

15   enjoin the ongoing unlawful data practices and alert WellSpace users impacted by these actions.

16                          **II.    JURISDICTION AND VENUE**

17         9.    The Court has personal jurisdiction over WellSpace because it is headquartered

18   in and conducts business exclusively or almost exclusively in California. Plaintiffs' and Class

19   Members' claims arose out of WellSpace's business practices within California.

20         10.   This Court has subject matter jurisdiction over this action pursuant to Article VI,

21   Section 10 of the California Constitution and Cal. Code Civ. Proc. § 410.10. This is a class

22   action lawsuit brought pursuant to Cal. Code of Civ. Proc. § 382. This Court has jurisdiction

23   over Plaintiffs' claims because the amount in controversy exceeds this Court's jurisdictional

24   minimum.

25         11.   Venue is proper in this Court under Code of Civil Procedure § 395(a), § 395.5m

26   and § 1780(c) because a substantial part of the events or omissions giving rise to Plaintiffs'

27   claims occurred in this county, and because Plaintiffs and Defendant are residents of this

28   county.

|  | III.    PARTIES |
|---|---|

1

2      12.    Plaintiff Latasha Mixon is a resident of Sacramento County, California. Plaintiff

3    provided private and medical information to WellSpace that was intercepted by Google via

4    Google Analytics. Plaintiff has been a WellSpace patient since 2019 and has been treated for a

5    number of conditions. Plaintiff has used WellSpace's website to: (i) make appointments; (ii)

6    search for specific treatments; (iii) access the patient portal; (iv) access virtual appointments; (v)

7    find doctors; and (vi) ask questions concerning conditions and treatment options. In each case,

8    Plaintiff Latasha Mixon accessed the WellSpace website through an internet browser.

9      13.    Plaintiff Rosana Korman is a resident of Sacramento County, California. Plaintiff

10   provided private and medical information to WellSpace that was intercepted by Google via

11   Google Analytics. Plaintiff has been a WellSpace patient since 2014 and has been treated for a

12   number of conditions. Plaintiff has used WellSpace's website to: (i) make appointments; (ii)

13   access the patient portal; (iii) access virtual appointments; (iv) check timing for appointments;

14   (v) check test results; (vi) find doctors; and (vii) exchange messages with providers. In each

15   case, Plaintiff Rosana Korman accessed the WellSpace website through an internet browser.

16     14.    Defendant WellSpace is a healthcare service provider that primarily serves

17   patients in and around Sacramento, California. WellSpace provides medical and dental care for

18   children and adolescents, as well as mental health and behavioral health services. WellSpace has

19   roughly 600 employees and generates roughly $115 million in annual revenue.

20     15.    The acts alleged to have been done by WellSpace were authorized, ordered, or

21   performed by its directors, officers, managers, agents, employees, or representatives in the

22   course of their employment and while actively engaged in the management of WellSpace's

23   affairs.

24     16.    WellSpace, through its subsidiaries, divisions, affiliates and agents, operated as a

25   single unified entity with each acting as the agent or joint-venturer of or for the others with

26   respect to the acts, violations, and common course of conduct alleged herein and under the

27   authority and apparent authority of parent entities, principals and controlling parties.

28

### IV.    CLASS ACTION ALLEGATIONS

17.    Plaintiffs bring this action on behalf of themselves and as a class action under Cal. Civ. Proc. § 382 on behalf of the members of the following Class:

> All California residents whose information was intercepted by Google without authorization during the Class Period as a result of using WellSpace's website (the "Class").

> Specifically excluded from the Class are Defendant and its officers, directors or employees; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant. Also excluded from the Class are any attorneys appearing in this matter, any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his or her immediate family and judicial staff, and any juror assigned to this action.

18.    The Class Period is the full extent of the applicable limitations period, including any tolling or other equitable considerations that extend the limitations period.

19.    <u>Class Identity:</u> The Class is readily identifiable and is one for which records should exist.

20.    <u>Numerosity:</u> Class Members are so numerous and geographically dispersed that joinder is impracticable. Tens of thousands of individuals had their information intercepted by Google without authorization during the Class Period because of using WellSpace's website.

21.    <u>Typicality:</u> Plaintiffs' claims are typical of the claims of Class Members because Plaintiffs had their information intercepted by Google without authorization during the Class Period because of using WellSpace's website.

22.    Defendant has acted in a manner that applies generally to Plaintiffs and all Class Members. Each Class Member has been similarly impacted by Defendant's failure to comply with California law concerning the dissemination and protection of private and medical information.

23.    <u>Commonality:</u>    There are questions of law and fact common to the Class, including, but not limited to:

(a)    whether Defendant violated § 631 of CIPA by aiding, agreeing with, and conspiring with Google to disclose, share with, or permit Google to collect Class

1    Members' communications made while using WellSpace's website;

2    (b)    whether Defendant was unjustly enriched by disclosing, sharing with, or

3    permitting the collection of Class Members' communications and medical

4    information with Google to increase advertising effectiveness;

5    (c)    whether Class Members suffered economic injury under the UCL due to

6    Defendant's unlawful and unfair business practices;

7    (d)    whether Class Members' communications with WellSpace were obtained by

8    Google while in transit;

9    (e)    whether WellSpace obtained consent from Class Members to share, disclose or

10    permit the collection of communications and medical information made while

11    using WellSpace's website; and

12    (f)    whether Google Analytics is a "machine, instrument, or contrivance" as the term

13    is used by § 631 of CIPA.

14    24.    <u>Predominance</u>: The above-listed questions of law and fact common to all Class

15    Members predominate over questions that may affect individual Class Members.

16    25.    <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of the Class

17    in that Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members

18    of the Class and Plaintiffs have retained counsel competent and experienced in the prosecution

19    of class actions and complex data privacy cases to represent themselves and the Class.

20    26.    <u>Superiority and Manageability</u>: A Class action is superior to all other available

21    methods for the fair and efficient adjudication of this controversy since joinder of all Class

22    Members is impracticable. The individual prosecution of separate actions by individuals would

23    lead to repetitive adjudication of common questions and fact and law and create a risk of

24    inconsistent or varying adjudications that would establish incompatible standards of conduct for

25    Defendant.  There will be no difficulty in the management of this action as a Class action.

26                          **V.    FACTUAL ALLEGATIONS**

27    **A.    Background**

28    27.    Google is one of the largest companies in the world and generates most of its

6

1  revenue from selling advertising space and services. To improve the quality of its advertising

2  services, Google collects vast amounts of data from people while they use the internet,

3  regardless of whether they have or are signed into a Google account. Google uses this

4  information to, among other things, improve the quality of its individual advertising profiles.

5  The more detail Google has for an individual advertising profile, the more valuable the

6  advertising profile becomes.

7        28.    One way that Google collects and monetizes data is through Google Analytics,

8  which is a platform that intercepts data from websites to create reports that provide advertising

9  and marketing insights for website operators. These insights include the origin of website

10  traffic, how website visitors interact with the website, the demographics of website visitors, and

11  the frequency with which visitors view the website.

12        29.    To use the version of Google Analytics at issue in this case (Universal Google

13  Analytics), website operators must create a Google Analytics account and embed a snippet of

14  Google code into their webpage code. This code acts as a tracking pixel and enables Google to

15  intercept communications between the visitor and the website in real time, including how the

16  user interacted with the website and information the user provided to the website.

17        30.    Often, the data transmitted to Google includes not only data about the page being

18  viewed but also identifiers that allow the data to be connected to specific individuals. The most

19  common of these identifiers is an IP address.

20        31.    Google offers website owners the opportunity to anonymize IP addresses to help

21  website operators comply with internal policies and applicable law. If the IP anonymization

22  feature is enacted, then an additional parameter is added to the communications between the

23  user's computer and the Google Analytics server.

24        32.    Google and website operators benefit financially from Google Analytics.

25  Website operators use Google Analytics to increase advertising effectiveness, efficiency, and

26  return-on-investment. According to Google, Google Analytics leverages the data collected to

27  develop analytics that allow business owners to "[g]et a complete understanding of [their]

28  customers" and gives business owners tools "to understand the customer journey and improve

1  marketing ROI."[1]

2       33.    Google further explains that Google Analytics helps website operators in the

3  following ways:

4      • "Understand your customers" by unlocking "customer-centric measurement

5          across your sites and apps, so you know what's working and what's not. See how

6          people engage with your business and the role different channels play with

7          advanced reporting and analysis. You can even connect systems used to measure

8          CRM, points of sale, and other first-party data sources for a more complete

9          view."[2]

10      • "Get smarter insights to improve ROI" by using "Google's machine learning to

11          discover new and predictive insights form your data—such as which users are

12          likely to purchase or churn. Machine learning will enhance your measurement

13          when observed data isn't available."[3]

14       34.    In exchange for helping website operators increase revenue from advertising,

15  Google receives data regarding the website operator's users, which it uses to increase the value

16  of its advertising services and profiles. Google also uses the data to increase the effectiveness of

17  its search services and rankings therein.

18       35.    For example, Google uses this data to improve the effectiveness of Google

19  Audience Targeting, which is a service that directs ads at a specific group of people who share

20  certain attributes. This occurs on websites owned by Google and third-party websites.

21       36.    Google associates the collected data to specific users, which occurs regardless of

22  whether an individual is signed into a Google account (e.g., Gmail) or even has a Google

23  account. Typically, this occurs through Google's collection of IP addresses, which are

24  sufficiently unique to identify a specific user. Google can also associate the information with a

25  _____

26  [1] Benefits of Analytics for Data-Driven Marketing - Google Analytics.

27  [2] *Id.*

28  [3] *Id.*

1   specific user through other identifiers it collects.

2   **B.      WellSpace Engages in Unlawful Conduct through its use of Google Analytics.**

3          37.      WellSpace operates a highly interactive website that patients can use for a
4   number of services. From links on just the home page, users can find a doctor, review different
5   types of care offered by WellSpace, and evaluate whether users qualify for WellSpace's
6   services. If users click on "Patient" in the drop-down menu on the homepage, then they are sent
7   to the patient resources page, which allows patients to, among other things, login to their
8   portals, review FAQs and brochures for WellSpace, and sign-up for WellSpace Health
9   Connect—Patient Portal. Patients can also engage in keyword searches in the internal search bar
10  that can be accessed on every page (either directly or through a drop-down menu).

11         38.      Unbeknownst to users, WellSpace has implemented Google Analytics. As a
12  result, Google intercepts user information without consent, including: (i) types of treatment
13  users are seeking; (ii) physicians with whom patients are seeking treatment; (iii) locations in
14  which users are receiving treatment; (iv) search queries from the website's internal search bar;
15  and (v) when a patient accesses the website's virtual appointment portal.

16         39.      WellSpace also enables Google to obtain users' IP addresses. WellSpace could
17  have used Google's IP anonymization feature but decided not to utilize this feature. As a result,
18  Google can connect the intercepted data to specific individuals.

19         40.      The following are representative examples demonstrating how WellSpace users'
20  data is intercepted by Google via Google Analytics. Patients can select the "Find a Doctor"
21  option on WellSpace's homepage. Once selected, the "Find a Doctor" feature allows patients to
22  search for and locate doctors, specialists, and healthcare centers according to location or service
23  requirements. This enables patients to find healthcare professionals who are in their
24  neighborhood and provide the service they need, as shown in the image below:

25

26

27

28

CLASS ACTION COMPLAINT

41.   Once patients search for a doctor, WellSpace enables Google to intercept the communication, which includes information identifying where the patient is seeking service and the specific services for which the patient is seeking treatment. The following illustrates the information that Google intercepts through Google Analytics:

```
POST /j/collect?v=1&_v=j101&a=269317858&t=pageview&_s=1&dl=
https%3A%2F%2Fwww.wellspacehealth.org%2Ffind-a-doctor%3Farea%3Dnorth-highlands
%26service%3Dbirth-beyond-family-resource-center&ul=en-us&de=UTF-8&dt=
Find%20a%20Doctor%20-%20WellSpace%20Health&sd=30-bit&sr=1728x1117&vp=2304x1201
&je=0&fl=32.0%20r0&_u=AACAAEABAAAAACAAI~&jid=&gjid=&cid=935588358.1695732475&
tid=UA-73216177-1&_gid=1961214188.1695732475&_slc=1&z=1833470982 HTTP/2
Host: www.google-analytics.com
Content-Length: 0
Sec-Ch-Ua: "Google Chrome";v="117", "Not;A=Brand";v="8", "Chromium";v="117"
Sec-Ch-Ua-Platform: "macOS"
Sec-Ch-Ua-Mobile: ?0
User-Agent: Mozilla/5.0 (Macintosh; Intel Mac OS X 10_15_7) AppleWebKit/537.36
  (KHTML, like Gecko) Chrome/117.0.0.0 Safari/537.36
Content-Type: text/plain
Accept: */*
Origin: https://www.wellspacehealth.org
Sec-Fetch-Site: cross-site
Sec-Fetch-Mode: cors
Sec-Fetch-Dest: empty
Referer: https://www.wellspacehealth.org/
Accept-Encoding: gzip, deflate
Accept-Language: en-US,en;q=0.9,he;q=0.8
```

42.   Likewise, when searching for healthcare providers, patients can browse all locations in their area that specialize in the treatment they are seeking. They can then click on a center to view details about that healthcare provider, as the following diagrams demonstrate:

10





**CLASS ACTION COMPLAINT**

43.    Thereafter, the website provides a list of doctors. Patients can search each doctor's profile page to obtain more details. These searches are intercepted by Google. For example, the following diagrams demonstrate what happens when a patient selects the profile page of Rhonette Jackson, MD:



```
POST /j/collect?v=1&_v=j101&a=201939452&t=pageview&_s=1&dl=
https%3A%2F%2Fwww.wellspacehealth.org%2Fperson%2Frhonette-jackson&ul=en-us&de=
UTF-8&dt=Rhonette%20Jackson%2C%20MD%20-%20WellSpace%20Health&sd=30-bit&sr=
1728x1117&vp=2304x1201&je=0&fl=32.0%20r0&_u=AACAAEABAAAAACAAI~&jid=2010110142&
gjid=1512334147&cid=935588358.1695732475&tid=UA-73216177-1&_gid=
1961214188.1695732475&_r=1&_slc=1&z=614894357 HTTP/2
Host: www.google-analytics.com
Content-Length: 0
Sec-Ch-Ua: "Google Chrome";v="117", "Not;A=Brand";v="8", "Chromium";v="117"
Sec-Ch-Ua-Platform: "macOS"
Sec-Ch-Ua-Mobile: ?0
User-Agent: Mozilla/5.0 (Macintosh; Intel Mac OS X 10_15_7) AppleWebKit/537.36
  (KHTML, like Gecko) Chrome/117.0.0.0 Safari/537.36
Content-Type: text/plain
Accept: */*
Origin: https://www.wellspacehealth.org
Sec-Fetch-Site: cross-site
Sec-Fetch-Mode: cors
Sec-Fetch-Dest: empty
Referer: https://www.wellspacehealth.org/
Accept-Encoding: gzip, deflate
Accept-Language: en-US,en;q=0.9,he;q=0.8
```

1    44.    Based on the information intercepted, Google can determine (i) where the patient

2    is seeking treatment (North Highlands Community Health Campus), (ii) the doctor with whom

3    the patient is seeking treatment (Dr. Jackson), and (iii) the type of treatment the patient is

4    seeking (pediatrics).

5    45.    Google also intercepts any information submitted by a patient through the

6    internal search bar on WellSpace's homepage. The following diagrams demonstrate what

7    happens when a patient searches for cardiology:



```
POST /j/collect?v=1&_v=j101&a=1011070674&t=pageview&_s=1&dl=
https%3A%2F%2Fwww.wellspacehealth.org%2F%3Fs%3Dcardiology&ul=en-us&de=UTF-8&dt
=You%20searched%20for%20cardiology%20-%20WellSpace%20Health&sd=30-bit&sr=
1728x1117&vp=2304x1201&je=0&fl=32.0%20r0&_u=AACAAEABAAAAACAAI~&jid=&gjid=&cid=
935588358.1695732475&tid=UA-73216177-1&_gid=1961214188.1695732475&_slc=1&z=
755345533 HTTP/2
Host: www.google-analytics.com
Content-Length: 0
Sec-Ch-Ua: "Google Chrome";v="117", "Not;A=Brand";v="8", "Chromium";v="117"
Sec-Ch-Ua-Platform: "macOS"
Sec-Ch-Ua-Mobile: ?0
User-Agent: Mozilla/5.0 (Macintosh; Intel Mac OS X 10_15_7) AppleWebKit/537.36
 (KHTML, like Gecko) Chrome/117.0.0.0 Safari/537.36
Content-Type: text/plain
Accept: */*
Origin: https://www.wellspacehealth.org
Sec-Fetch-Site: cross-site
Sec-Fetch-Mode: cors
Sec-Fetch-Dest: empty
Referer: https://www.wellspacehealth.org/
Accept-Encoding: gzip, deflate
Accept-Language: en-US,en;q=0.9,he;q=0.8
```

46.    By intercepting this information, Google receives information concerning the user's condition.

47.    Google also intercepts information that demonstrates when a patient visits its "Virtual Visit Portal." The following diagrams demonstrate how this interception occurs:

CLASS ACTION COMPLAINT

```
POST /j/collect?v=1&_v=j101&a=1259633532&t=pageview&_s=1&dl=
https%3A%2F%2Fwww.wellspacehealth.org%2Fvirtual-visit-portal&ul=en-us&de=UTF-8
&dt=
Welcome%20to%20the%20WellSpace%20Health%20Virtual%20Visit%20portal%20-%20WellS
pace%20Health&sd=30-bit&sr=1728x1117&vp=2304x1201&je=0&fl=32.0%20r0&_u=
AACAAEABAAAAACAAI~&jid=1013256891&gjid=1228624508&cid=935588358.1695732475&tid
=UA-73216177-1&_gid=1961214188.1695732475&_r=1&_slc=1&z=1460259891 HTTP/2
Host: www.google-analytics.com
Content-Length: 0
Sec-Ch-Ua: "Google Chrome";v="117", "Not;A=Brand";v="8", "Chromium";v="117"
Sec-Ch-Ua-Platform: "macOS"
Sec-Ch-Ua-Mobile: ?0
User-Agent: Mozilla/5.0 (Macintosh; Intel Mac OS X 10_15_7) AppleWebKit/537.36
  (KHTML, like Gecko) Chrome/117.0.0.0 Safari/537.36
Content-Type: text/plain
Accept: */*
Origin: https://www.wellspacehealth.org
Sec-Fetch-Site: cross-site
Sec-Fetch-Mode: cors
Sec-Fetch-Dest: empty
Referer: https://www.wellspacehealth.org/
Accept-Encoding: gzip, deflate
Accept-Language: en-US,en;q=0.9,he;q=0.8
```

48.    By intercepting this information, Google knows that a patient is obtaining virtual healthcare treatment and when the patient is obtaining the treatment.

49.    Again, when the above information is combined with the individual's IP address, Google can identify the specific person who has submitted this information through the WellSpace website. Accordingly, WellSpace is disclosing its online patients' identifiable private and medical information without their knowledge or consent.

**C.    WellSpace harmed Plaintiffs and Class Members.**

50.    There is a significant market for consumers' medical data, and the value of medical data far exceeds the value of other types of consumer data. According to a 2021 article from Forbes, "[r]eports show the value of a health record can be worth as much as $1,000, whereas on the dark web, a credit card number is worth $5 and Social Security numbers are worth $1."[4]

51.    According to a second 2021 report, personal medical information is one of the

---

[4] Healthcare Data: The Perfect Storm (forbes.com).

CLASS ACTION COMPLAINT

most valuable types of data a consumer possesses. According to the report, a person's social security number sells on the black market for an average of $0.53 while a person's health care records sell for $250 on average. The article included the following breakdown of prices paid for various pieces of data:

| Record Type | Average Price |
| --- | --- |
| Health Care Record | $250.15 |
| Payment Card Details | $5.40 |
| Banking Records | $4.12 |
| Access Credentials | $0.95 |
| Social Security Number | $0.53 |
| Credit Record | $0.31 |
| Basic PII | $0.03 |

52.    According to a 2017 article from Forbes, electronic medical records were worth "hundreds or even thousands of dollars," while social security numbers were worth $0.10 and credit card numbers were worth $0.25.[5]

53.    Healthcare providers spend millions of dollars annually to purchase health data and medical data. In fact, the medical data industry was valued at over $2.6 billion as of 2014, and this value has only increased exponentially in the ten years since this estimate was generated.

54.    Through its scheme discussed herein to intercept and use Plaintiffs' and Class Members' private medical data for its financial benefit, WellSpace has deprived Plaintiffs and Class Members of the economic value of their private medical information.

55.    In addition, WellSpace has deprived Plaintiffs and Class Members of the benefit of their bargain. Plaintiffs and Class Members reasonably expected that WellSpace would protect their private and medical data. Plaintiffs and Class Members would not have obtained

---

[5] Your Electronic Medical Records Could Be Worth $1000 To Hackers (forbes.com).

16

1    services from WellSpace or would have paid less for the services if they knew WellSpace had

2    enabled Google to intercept their data.

3    **D.    Tolling**

4        56.    Any applicable statute of limitations has been tolled by WellSpace's knowledge

5    and concealment of the unlawful conduct and misrepresentations alleged herein. Plaintiffs and

6    Class Members could not have discovered WellSpace's unlawful conduct through reasonable

7    diligence.

8        57.    WellSpace knowingly, actively, affirmatively and/or negligently concealed the

9    facts alleged herein. Plaintiffs and Class Members reasonably relied on WellSpace's

10   concealment.

11   **VI.    CLAIMS ALLEGED ON BEHALF OF THE CLASS**

12   **COUNT I**

13   **Violation of the California Invasion of Privacy Act, Cal. Penal Code § 630, et seq.**
     **(Plaintiffs and Class Against Defendant)**

14

15       58.    Plaintiffs repeat and reallege every allegation set forth in the preceding

16   paragraphs as if set forth herein.

17       59.    California Penal Code § 631(a) provides in pertinent part:

18   Any person who, by means of any machine, instrument, or contrivance, or in
     any other manner . . . willfully and without the consent of all parties to the
19   communications . . . or in any unauthorized manner, reads, or attempts to read,
     or to learn the contents or meaning of any message, report, or
20   communication while the same is in transit or passing over any wire, line, or
     cable, or is being sent from, or received at any place within this state; or
21   who uses, or attempts to use, in any manner, or for any purpose, or to
     communicate in any way, any information so obtained, or who aids, agrees
22   with, employs, or conspires with any person or persons to unlawfully do, or
     permit, or cause to be done any of the acts or things mentioned above in this
23   section, is punishable by a fine not exceeding two thousand five hundred
     dollars ($2,500).
24

25       60.    Google violated CIPA by using Google Analytics to intercept Plaintiffs' and

26   Class Members' information when interacting with WellSpace's website. Plaintiffs' and Class

27   Members' communications were intercepted by Google while in transit, passing over a wire,

28   line or cable, and were sent and/or received at a place within California. The communications

17

1    were intercepted by Google without the knowledge, authorization, or consent of Plaintiffs or

2    Class Members. Google viewed and used this information to increase the value of its advertising

3    tools and services.

4          61.    WellSpace aided, employed, agreed with, and/or conspired with Google to track

5    and intercept Plaintiffs' and Class Members' communications while they used WellSpace's

6    website. WellSpace willfully and intentionally inserted an electronic device (Google Analytics)

7    into its website that, without the knowledge or consent of Plaintiffs and Class Members,

8    recorded and transmitted the substance of their confidential communications with WellSpace to

9    Google.

10          62.    Google Analytics constitutes a machine, instrument, and/or contrivance as these

11    terms are used in Cal. Penal Code § 631.

12          63.    WellSpace does not disclose that it is using Google Analytics to enable Google

13    to track and automatically and in real time collect users' information and send it to Google.

14    WellSpace does not have any privacy policy on its website and Google's policies state they will

15    not collect private health information.

16          64.    The communications that WellSpace permits Google to intercept include several

17    categories of private and medical information, including: (i) types of treatment users are

18    seeking; (ii) physicians with whom patients are seeking treatment; (iii) search queries from the

19    website's internal search bar; and (iv) when a patient accesses the website's virtual appointment

20    portal. In connection with this information, Google receives users' IP addresses, allowing

21    Google to connect the data to specific individuals.

22          65.    Google and WellSpace use the information intercepted by Google Analytics for

23    pecuniary purposes. Google uses the information to increase the value of its advertising tools

24    and services. In exchange for providing its users' information to Google, WellSpace receives

25    information and analytics provided by Google that WellSpace uses to refine and more

26    effectively advertise to new and existing users.

27          66.    By violating Cal. Penal Code § 631, WellSpace is liable to Plaintiffs and Class

28    Members for the greater of (i) treble actual damages related to their loss of privacy or (ii)

1   $5,000 per violation. Under Cal. Penal Code § 637.2(a), Plaintiffs and Class Members need not

2   suffer or be threatened with any additional damages.

3       67.     WellSpace is also liable for reasonable attorney's fees, litigation costs, injunctive

4   and declaratory relief, and punitive damages in an amount to be determined by a jury.

5                                    **COUNT II**

6                             **Unjust Enrichment**
                    **(Plaintiffs and Class Against Defendant)**
7

8       68.     Plaintiffs repeat and reallege every allegation set forth in the preceding

9   paragraphs as if set forth herein.

10      69.     Through the unlawful disclosure of the private and medical information of Class

11  Members discussed herein, WellSpace has been unjustly enriched. WellSpace did not obtain

12  consent to disclose users' private or medical information or indicate to users that it was

13  disclosing their information to third parties. Even so, WellSpace imbedded Google Analytics on

14  its website, allowing Google to obtain users' private and medical information. In exchange,

15  WellSpace received information and analytics that allowed it to refine and more effectively

16  advertise to new and existing patients, increasing revenue as a result.

17      70.     Class Members were impoverished through WellSpace's unlawful disclosure of

18  their personal information and medical information. The information disclosed by WellSpace is

19  some of the most valuable information consumers possess, particularly information concerning

20  patients' medical conditions, history, and treatment. WellSpace denied Plaintiffs and Class

21  Members the value of their private and medical information without any compensation.

22      71.     There is a direct and significant connection between WellSpace's enrichment and

23  Plaintiffs' and Class Members' impoverishment. WellSpace's unlawful sharing of Plaintiffs'

24  and Class Members' private and medical information with Google through Google Analytics

25  directly led to WellSpace's enrichment and caused Plaintiffs' and Class Members'

26  impoverishment.

27      72.     There is no justification for WellSpace's enrichment. WellSpace placed profit

28  above lawful conduct. If WellSpace complied with the law, then its unjust enrichment would

1  not have occurred.

2       73.    Plaintiffs and Class Members have no adequate remedy at law.

3  **COUNT III**

4  **Violation of California's Unfair Competition Law**
**(Plaintiffs and Class Against Defendant)**
5

6       74.    Plaintiffs repeat and reallege every allegation set forth in the preceding

7  paragraphs as if set forth herein.

8       75.    Plaintiffs bring this claim individually and on behalf of the Class.

9       76.    By placing Google Analytics on its website and permitting it to intercept

10  patients' private and medical information, WellSpace engaged in unlawful and unfair acts and

11  practices prohibited by the UCL.

12       77.    WellSpace did not obtain consent from Plaintiffs or the Class to have their

13  private and medical information sent to Google. It also did not alert Plaintiffs or the Class that

14  their private or medical information was being shared with any third party.

15       78.    Neither Plaintiffs nor any Class Member received compensation from any entity

16  in exchange for their personal and medical information shared with Google.

17       79.    WellSpace's conduct constitutes unfair and unlawful business practices under the

18  UCL. These practices offended established public policy and caused Plaintiffs and Class

19  Members to lose money and/or property. The injury to Plaintiffs and Class Members outweighs

20  any benefit to consumers or competition.

21       80.    Plaintiffs and Class Members suffered economic injury because of WellSpace's

22  unfair and unlawful business practices. By permitting Google to intercept patient data, Plaintiffs

23  and Class Members have suffered a diminution in value of their private and medical

24  information. Plaintiffs' and Class Members' data has significant value, there is a substantial

25  market for this information, and participants in this market now either have this data and would

26  no longer purchase it (e.g., Google) or can use this data when marketing through Google since

27  Google has incorporated it into individual ad profiles. Stated differently, Plaintiffs and Class

28  Members face a diminished market for their private and medical information at issue in this

20
CLASS ACTION COMPLAINT

1  case.

2      81.    Plaintiffs and Class Members also suffered economic injury because they did not

3  receive the benefit of their bargain with WellSpace. Plaintiffs and Class Members reasonably

4  expected that their private and medical information would be kept confidential as part of what

5  they paid WellSpace for when utilizing it for healthcare services. If Plaintiffs and Class

6  Members had known that WellSpace would permit Google to intercept their private and medical

7  information, then they would not have used WellSpace's services or would have paid less for

8  the services.

9      82.    Plaintiffs seek restitution and injunctive relief, which includes ordering

10  WellSpace to (i) remove from its website Google Analytics and any other tool used to collect

11  and share personal or medical information without patients' consent, and (ii) provide notice to

12  Class Members explaining that WellSpace enabled Google to intercept their private and/or

13  medical information when using WellSpace's website.

14           **VII.**    **PRAYER FOR RELIEF**

15      WHEREFORE, Plaintiffs, individually and on behalf of the Class, request the following

16  relief:

17      A.    A determination that this action is a proper class action under California Code of

18  Civil Procedure § 382, certifying Plaintiffs as Class representatives, and appointing the

19  undersigned counsel as Class counsel;

20      B.    Declaring that WellSpace violated CIPA by disclosing and/or permitting Google

21  to intercept and record Plaintiffs' and Class Members' communications, which included private

22  and medical information;

23      C.    Declaring that WellSpace was unjustly enriched by permitting Google to

24  intercept and record Plaintiffs' and Class Members' private and medical information in

25  exchange for improved marketing that boosted revenue;

26      D.    Declaring that WellSpace violated the UCL through its unlawful and unfair

27  business practices alleged herein;

28      E.    Awarding damages to Plaintiffs and Class Members, including statutory

1  damages, compensatory damages, punitive damages, and pre- and post-judgment interest to the

2  extent permitted by law;

3      F.      Permanently enjoining WellSpace from sharing Class Members' private and

4  medical information to third parties without consent;

5      G.      Permanently enjoining WellSpace from using information and analytics provided

6  by Google based on the unlawful interception of Class Members' private and medical

7  information;

8      H.      Requiring WellSpace to take reasonable steps to alert all users whose private or

9  medical information was unlawfully disclosed to Google or any other third party;

10      I.      Requiring WellSpace to alert the California Attorney General's office that it

11  unlawfully disclosed or permitted Google to intercept and record the private and medical

12  information of thousands of California residents;

13      J.      Awarding attorney's fees, expenses, and taxable costs to the extent permitted by

14  law; and

15      K.      Granting Plaintiffs and Class Members such other further relief as the Court

16  deems just and proper to protect their private and medical information.

17

18                            **VIII.    JURY DEMAND**

19      Plaintiffs demand a trial by jury on all issues so triable as a matter of right.

20

21  DATED: June 14, 2024

22                                       **MOGINRUBIN LLP**

23

24

25                                       Daniel J. Mogin
                                         Timothy Z. LaComb
26                                       4225 Executive Square, Suite 600
                                         La Jolla, CA 92037
27                                       Telephone:    (619) 687-6611
                                         Facsimile:    (619) 687-6610
28

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SINGLETON SCHREIBER, LLP**

Andrew D. Bluth (SBN 232387)
Christopher R. Rodriguez (SBN 212274)
1414 K Street, Suite 470
Sacramento, CA 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515

**Don Bivens PLLC**

Don Bivens
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone:    (602) 708-1450
*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT