1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LATASHA MIXON, et al.,                        No. 2:24-cv-02290-DJC-CSK

12                      Plaintiffs,

13          v.                                       ORDER

14    WELLSPACE HEALTH,

15                      Defendant.

16

17

18          Defendant removed this matter from Sacramento Superior Court on August 22,

19    2024, under 28 U.S.C. § 1442(a)(1) and 42 U.S.C. § 233(*l*)(2).  Plaintiffs have moved to

20    remand, arguing removal was procedurally and substantively improper under both

21    section 1442(a)(1) and section 233(*l*)(2).  Having considered the Parties' briefings and

22    arguments, the Court finds Defendant's removal under section 1442(a)(1) was

23    deficient because Defendant has not demonstrated it was acting under the direction

24    of a federal officer when it adopted and used Google Analytics on its Online Platforms

25    and Patient Portal.  While the Court also finds removal was premature under section

26    233(*l*)(2), the issue is ultimately moot as the Attorney General was required to remove

27    this action to federal court under 42 U.S.C. § 233(*l*)(1) pursuant to the precedent set in

28    *Blumberger v. Tilley*, 115 F.4th 1113 (9th Cir. 2024).  Thus, the Court will order the

                                                1

1   Parties to meet and confer within 14 days of this Order to advise the Court if a hearing

2   is needed to determine whether Defendant was acting within the scope of their

3   employment for the purposes of this action under 42 U.S.C. § 233(c).  The Court will

4   stay any decision on Plaintiffs' Motion to Remand in the interim.

5   **BACKGROUND**

6   Defendant WellSpace Health is a healthcare service provider based in

7   Sacramento, California.  (Compl. (ECF No. 1-1) ¶¶ 2, 13.)  Defendant offers several

8   services on its Online Platforms and Patient Portal, which allow users to search for

9   medical care providers, schedule appointments, and pay bills, among other things

10   (*Id.* ¶ 2.)  While utilizing these services, users must often input private and medical

11   information.  (*Id.* ¶ 3.)

12   Plaintiffs Latasha Mixon and Rosana Korman, Defendant's patients since 2019

13   and 2014 respectively, allege that Defendant has enabled Google LLC ("Google") to

14   intercept much of this private and medical information by placing Google Analytics on

15   its Online Platforms.  (*Id.* ¶¶ 3, 12–13.)  Plaintiffs allege Google Analytics intercepts

16   users' information in real time and redirects it to Google without users' knowledge or

17   consent.  (*Id.*)  In exchange for sending this data to Google, Plaintiffs allege Defendant

18   receives analytics and reports that it uses to improve marketing efficacy and increase

19   revenue.  (*Id.* ¶ 6.)

20   Plaintiffs brought this class action on June 14, 2024, in Sacramento Superior

21   Court arguing that, by enabling Google to intercept patient data, Defendant has

22   violated California's Invasion of Privacy Act, Cal. Penal Code § 631, and California's

23   Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*  (*Id.* ¶¶ 58–67, 74–82.)

24   Plaintiffs also argue Defendant has been unjustly enriched.  (*Id.* ¶¶ 68–73.)

25   Defendant removed this action to federal court on August 22, 2024, arguing

26   this Court has jurisdiction under 28 U.S.C. § 1442(a)(1) because it was acting under

27   the direction of a federal officer when deploying Google Analytics, and under 42

28   U.S.C. § 233(*l*)(2) because its deployment of Google Analytics is immunized as a

1   "related function" to its provision of healthcare services.  (Notice Removal (ECF No. 1).)

2   Plaintiffs moved to remand on September 23, 2024, arguing removal was untimely

3   and substantively deficient under both section 1442(a)(1)(2) and section 233(*l*)(2).

4   (Mot. Remand (ECF No. 8).)  The matter was submitted without oral argument

5   pursuant to Local Rule 230(g) on January 3, 2025.  (ECF No. 18.)

6           On January 10, 2025, the Court ordered the Parties to submit supplemental

7   briefing addressing the impact, if any, of *Blumberger*, 115 F.4th 1113, on Plaintiffs'

8   Motion to Remand.  (ECF No. 19.)  The Court also invited the United States Attorney

9   for the Eastern District of California ("U.S. Attorney") to file briefing addressing

10  *Blumberger* if desired.  (*Id.*)  The U.S. Attorney and Parties subsequently filed the

11  requested briefing.  (ECF Nos. 20–22.)

12                                      **DISCUSSION**

13  **I.      Removal Under 28 U.S.C. § 1442(a)(1) was Timely**

14          Plaintiffs first argue Defendant's removal was untimely under 28 U.S.C.

15  § 1442(a)(1) because Defendant removed this action more than 30 days after

16  receiving the Complaint.  (Mot. Remand at 5–9.)  The timeliness of removals under

17  section 1442 is governed by 28 U.S.C. § 1446(b).  *Blumberger*, 115 F.4th at 1121–22.

18  Under section 1446(b), the removing party must remove an action within 30 days of

19  receiving the pleading that provides the basis for removal.  28 U.S.C. § 1446(b)(1), (3);

20  *Bradford v. Asian Health Servs.*, No. 24-cv-01060-TLT, 2024 WL 2883672, at *7 (N.D.

21  Cal. June 6, 2024).  If a party fails to do so, then the court must remand the action

22  because "[t]he 30-day time limit is mandatory."  *Hauss v. Home Depot USA, Inc.*, No.

23  2:23-cv-01138-KJM-JDP, 2023 WL 5382164, at *2 (E.D. Cal. Aug. 21, 2023).

24          Under California law, a summons and complaint may be served on a

25  corporation to the person designated as agent for service of process.  *See* Cal. Code

26  Civ. Proc. § 416.10(a).  In lieu of personal delivery to that agent for service, service of a

27  summons and complaint on a corporation is effective by "leaving a copy of the

28  summons and complaint during usual office hours in his or her office or, if no physical

1   address is known, at his or her usual mailing address, other than a United States Postal

2   Service post office box, with the person who is apparently in charge thereof" and

3   "thereafter mailing a copy of the summons and complaint" to the place where a copy

4   of the summons and complaint were left.  *Id.* § 415.20(a).  Service is deemed

5   complete, at the latest, on the 10th day after the mailing.  *Id.*

6          Here, Plaintiffs argue they left a copy of the Complaint with and mailed a copy

7   of the Complaint to Defendant's registered California agent, Alasdair Jonathan

8   Porteus, on June 21, 2024.  (Mot. Remand at 6 (citing ECF No. 1-3 at 4–6).)  Thus,

9   Plaintiffs argue service was complete as of July 1, 2024, and Defendant had until July

10  31, 2024, to remove this action under section 1446(b).  (*Id.*)  As Defendant did not

11  remove this action until August 22, 2024, Plaintiffs argue remand is appropriate.  (*Id.*)

12         In response, Defendant argues its removal was timely because Plaintiffs did not

13  sufficiently serve them on July 1, 2024, and they did not receive a copy of the

14  Complaint until July 23, 2024.  (Opp'n Mot. Remand at 4.)  Defendant argues that

15  "Plaintiff's Proof of Service indicates that in lieu of serving WellSpace's designated

16  agent Alasdair Johnathan Porteus, WellSpace's CEO, Plaintiff left a copy of the

17  Summons and Complaint with Chang Haan, the manager of a Mail Center . . . [and]

18  [t]hereafter, Plaintiff's process server mailed a copy of the Complaint to WellSpace's

19  CEO at the same address."  (*Id.* at 5.)  Defendant argues such service was defective

20  because "the address wherein they served WellSpace–3104 O Street #336,

21  Sacramento, California–is the location of an entirely separate business unrelated to

22  WellSpace called Alhambra Mail & Parcel" which "is not the office listed on

23  WellSpace's corporate filings, nor is it even a WellSpace location, despite there being

24  nearly 20 WellSpace locations in the greater Sacramento area."  (*Id.*)  Instead,

25  Defendant argues that "[p]ursuant to the service statute, Plaintiffs were required to

26  hand deliver a copy of the summons and complaint to WellSpace's office and mailing

27  address–which is 1500 Expo Parkway, Sacramento, California."  (*Id.*)  Thus, Defendant

28

1  argues its removal was timely as it they were not effectively served until at least July

2  23, 2024.  (*Id.* at 6.)

3       Based on the record before the Court, it is not clear that Defendant was

4  sufficiently served as of July 1, 2024.  The Court has reviewed Defendant's Statement

5  of Information filed with the California Secretary of State, which lists its agent for

6  service of process as "ALASDAIR JONATHAN PORTEUS" and list the agent's address

7  as "3104 O STREET #336 SACRAMENTO, CA 95816."  (LaComb Decl., Ex. A ("Def.'s

8  Statement Information") (ECF No. 14-2).[1])  Plaintiffs served their Complaint on Porteus

9  at this location on June 21, 2024, by leaving a copy of the Complaint with "Chang

10  Haan, Manager of Mail Center," and by mailing a copy thereafter.  (*See* ECF No. 1-3 at

11  4–6.)  Plaintiffs argue this service was sufficient under California law.

12        However, section 415.20(a) specifies that service must be attempted at an

13  agent's "office or, if no physical address is known, at his or her usual mailing address

14  . . . ."  Code Civ. Proc. § 415.20(a).  It appears that the 3104 O Street #336 Sacramento,

15  CA 95816 address was a mailing, not office, address for Porteus.  Indeed, in the Proof

16  of Service documents, the process server checked a box to indicate that service was

17  attempted at 3104 O Street, a mail center, because Porteus's physical address was

18  unknown.  (*See* ECF No. 1-3 at 4.)  However, Defendant's corporate Statement of

19  Information lists Porteus's office address as 1500 Expo Parkway, Sacramento, CA

20  95815.  (Def.'s Statement Information.)  Thus, Plaintiffs have not established Porteus's

21  physical address was unknown.  Because section 415.20(a) requires service on an

22  agent's office unless no physical address is known, the Court cannot find service was

23  clearly completed as of July 1, 2024.  *See, e.g., Dist. Council 16 N. Cal. Health &*

24  *Welfare Trust Fund v. Masterpiece Painting, Inc.*, No. 22-cv-06540-HSG (LJC), 2024 WL

25  735658, at *1–2 (N.D. Cal. Feb. 22, 2024) (ordering plaintiffs to show cause why

26

27  [1] Because courts may take judicial notice of an undisputed matter of public record, the Court takes
judicial notice of the Statement of Information.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d

28  741, 746 n.6 (9th Cir. 2006).

service was proper under section 415.20(a) when service was only attempted on a mailing rather than a physical address).

Accordingly, Plaintiffs have failed to establish Defendant's removal under 28 U.S.C. § 1442(a)(1) on August 22, 2024, was untimely.  The Court will not remand on that basis.

**II.    Removal under 28 U.S.C. § 1442(a)(1) was Improper**

Plaintiffs also argue that removal under 28 U.S.C. § 1442(a)(1) was improper because Defendant has not established it was acting "pursuant to a federal officer's directions."  (Mot. Remand at 9–13.)  28 U.S.C. § 1442(a), the federal officer removal statute, "permits removal of a state-court action against an 'officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.'"  *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1098–99 (9th Cir. 2018) (quoting 28 U.S.C. § 1442(a)(1)).  When the removing party under the federal officer removal statute is not itself a federal officer or agency,[2] it must make a threshold showing that "(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims; and (c) it can

---

[2] Defendant also appears to argue it qualifies as a federal officer because, "[w]hen broadly construed . . . the phrase 'any officer' in Section 1442 can be read to include [Defendant] as it is 'deemed to be an employee of the [United States Public Health Service ("PHS")]' under a federal statute [42 U.S.C. § 233] that not only affords [Defendant] a federal immunity defense, but affords an additional removal right as well."  (Notice Removal ¶ 10.)  However, principles of statutory interpretation foreclose Defendant's conclusion.  The plain language of section 233 states that an individual may be deemed an employee of PHS, and thus a federal employee, "for purposes of this section," not for purposes of all federal removal statutes.  *See* 42 U.S.C. § 233(g)(1)(A); *accord Ramos v. San Diego Am. Indian Health Ctr.*, No. 23-cv-570-MMA-AHG, 2024 WL 1117093, at *9 (S.D. Cal. Mar. 14, 2024) (holding "[d]efendant cannot rely on its PHS employee status to show that it acted under the color of federal office for removal purposes [under 28 U.S.C. § 1442(a)(1)] because [42 U.S.C. § 233(g)(1)(A)] expressly provides that such a determination is only "[f]or purposes of this section").  Defendant points to *Friedenberg v. Lane County*, 68 F.4th 1113 (9th Cir. 2023) for the proposition that "a federally funded community health center under PHS Law [is] entitled to removal as a federal officer under 28 U.S.C. § 1442(a)(1)."  (Notice Removal ¶ 54.)  However, the issue decided by the Ninth Circuit in *Friedenberg* was whether the defendants invoked section 1442(b)(1) in their removal notice, not whether they were acting under federal authority when engaging in the relevant conduct.  *See Friedenberg*, 68 F.4th at 1123–24.  Thus, Defendant does not qualify as a federal officer for the purposes of section 1442.

1    assert a colorable federal defense." *Doe v. Cedars-Sinai Health Sys.*, 106 F.4th 907,

2    913 (9th Cir. 2024) (quoting *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755

3    (9th Cir. 2022)).  "Unlike removal under § 1441 which is construed narrowly, federal

4    officer removal must be liberally construed." *Id.* (internal quotation marks and citation

5    omitted).  However, the court may not expand the federal officer removal statute

6    beyond its reach, "potentially bringing within its scope state-court actions filed against

7    private firms in many highly regulated industries." *Id.* (quoting *Cnty. of San Mateo*, 32

8    F.4th at 757).

9         Defendant asserts that federal jurisdiction exists under 28 U.S.C. § 1442(a)(1)

10   because (1) it is a person within the meaning of that statute; (2) it developed its Online

11   Platforms and Patient Portal, which use Google Analytics, pursuant to federal

12   direction, and there is a causal nexus between its development of these websites and

13   Plaintiffs' claims; and (3) it has a colorable federal defense to Plaintiffs' claims.  (Notice

14   Removal ¶¶ 8–12, 38–63.)  Plaintiffs do not challenge that Defendant is a "person"

15   under the statute.  (Mot. Remand at 9.)  Rather, Plaintiffs dispute that Defendant was

16   acting under the direction of a federal officer when adopting and using Google

17   Analytics.  (*Id.* at 9–13.)

18        The Court agrees.  "To satisfy § 1442(a)(1)'s causal nexus requirement, [a

19   defendant] must demonstrate that it was acting under a federal officer in performing

20   some act under color of federal office, i.e., that it was involved in an effort to assist, or

21   to help carry out, the duties or tasks of the federal superior." *Cedars-Sinai Health Sys.*,

22   106 F.4th at 913 (internal quotations marks omitted).  "[T]he mere 'fact that a federal

23   regulatory agency directs, supervises, and monitors a company's activities in

24   considerable detail' does not mean the company acts under a federal officer for

25   removal purposes." *Id.* (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 145

26   (2007)).  "A private firm's compliance (or noncompliance) with federal laws, rules, and

27   regulations does not by itself fall within the scope of the statutory phrase 'acting

28   under' a federal 'official.'  And that is so even if the regulation is highly detailed and

1   even if the private firm's activities are highly supervised and monitored."  *Watson*, 551

2   U.S. at 153.  To determine whether a person is acting under a federal officer, courts

3   consider whether (1) "the person is acting on behalf of the officer in a manner akin to

4   an agency relationship[,]" (2) "the person is subject to the officer's close direction,

5   such as acting under the 'subjection, guidance, or control' of the officer, or in a

6   relationship which 'is an unusually close one involving detailed regulation, monitoring,

7   or supervision[,]'" (3) "the private person is assisting the federal officer in fulfilling

8   basic governmental tasks that the Government itself would have had to perform if it

9   had not contracted with a private firm[,]" and (4) "the private person's activity is so

10  closely related to the government's implementation of its federal duties that the

11  private person faces a significant risk of state-court prejudice, just as a government

12  employee would in similar circumstances, and may have difficulty in raising an

13  immunity defense in state court."  *Cnty. of San Mateo*, 32 F.4th at 756.

14          In support of removal, Defendant outlines the legislative and regulatory

15  background leading to the development of its Online Platforms and Patient Portal.

16  (Notice Removal ¶¶ 23–30.)  In 2009, Congress passed the Health Information

17  Technology for Economic and Clinical Health ("HITECH") Act to encourage healthcare

18  providers to digitize medical records and make them available online to patients and

19  medical care providers.  (*Id.* ¶ 24.)  The Office of the National Coordinator for Health

20  Information Technology ("National Coordinator"), which is tasked with coordinating

21  these efforts, has published strategies for healthcare providers to implement the

22  HITECH Act's objectives.  (*Id.* ¶ 25.)  One aspect of these strategies is the "Meaningful

23  Use Program," 42 C.F.R. § 495.2 *et seq.*, which mandates participating healthcare

24  providers provide patients with the ability to "view, download, and transmit" their

25  health information online.  (*Id.* ¶ 26 (citing 42 C.F.R. § 495.20(f)(12)).)  To achieve the

26  objectives of this program, the National Coordinator and the Centers for Medicare

27  and Medicaid Services provide healthcare providers with requirements they must

28

1   meet and guidance in order to federal receive incentive payments and/or to avoid

2   reductions to their Medicare reimbursements.  (*Id.* ¶¶ 26–29, 50.)

3        Defendant argues that, when creating and implementing its Online Platforms

4   and Patient Portal, it acted in response to and in furtherance of these federal

5   directives.  (*Id.* ¶¶ 30, 43–51.)  Defendant argues there is a causal connection between

6   its development of its Online Platforms and Patient Portal under these federal

7   directives and Plaintiffs' claims because "Plaintiffs' Complaint directly challenges the

8   data analytic practices used by [Defendant] [on] its Online Platforms and Patient Portal

9   which help drive patients to [Defendant]'s website and to its Online Platforms" which is

10  "precisely what the Meaningful Use program envisions."  (*Id.* ¶ 55.)

11       Defendant's arguments are unpersuasive and foreclosed by recent circuit

12  precedent in *Cedars-Sinai Health Sys.*, in which the Ninth Circuit held that the federal

13  officer removal statute did not confer federal jurisdiction in three consolidated cases

14  that likewise involved the Meaningful Use Program and healthcare providers' use of

15  third-party tracking software on their website and patient portal.  106 F.4th at 916.  In

16  *Cedars-Sinai Health Sys.*, the healthcare providers' website and patient portal used

17  codes to track patients' interactions with the website to relay the information back to

18  the healthcare providers and to third parties, such as Meta and Google.  *Id.* at 911–12.

19  The providers submitted yearly reports attesting to their progress in implementing the

20  Meaningful Use Program's objectives to take advantage of the federal incentive

21  payments.  *Id.*  After the plaintiffs filed actions asserting violations of California law, the

22  defendants removed the cases to federal court under the federal officer removal

23  statute.  The Ninth Circuit upheld the district court's orders remanding the cases back

24  to state court for lack of jurisdiction, finding that the healthcare providers did not

25  assist the National Coordinator with delegated "basic governmental tasks" when they

26  created and operated the patient portal and website because "[a]cting under a federal

27  officer entails more than 'simply complying with the law.'"  *Id.* at 916.  Rather, the court

28  reasoned, to benefit from federal officer removal, the healthcare providers would

9

1    need to show they were "helping the Government to produce an item it needs," which

2    "generally involves a 'delegation of legal authority' from a federal entity." *Id.* (quoting

3    *Watson*, 551 U.S. at 156).

4          Like the healthcare providers in *Cedars-Sinai Health Sys.*, Defendant argues that

5    it was acting pursuant to a federal officer's directions because it "complied with the

6    broad requirements of the HITECH Act, which apply to any healthcare provider

7    participating in the Meaningful Use Program." *Id.* at 917.  But Defendant's voluntary

8    participation in the Meaningful Use Program and compliance with its requirements

9    does not make Defendant's website "a federal government website, or [one] that it is

10   operated on the government's behalf or for the federal government's benefit." *Id.*

11   While Defendant's actions may have advanced the government's policy, the website

12   remains a "private website, built by a private entity, to serve that private entity's

13   patients and staff." *Id.*

14         In short, Defendant was not "acting under" a federal officer by participating in

15   the Meaningful Use Program or in creating and operating Defendant's Online

16   Platforms or Patient Portal.  Accordingly, section 1442(a)(1) does not provide a basis

17   for jurisdiction in this case.

18   **III.    Plaintiffs' Arguments Concerning Premature Removal under 42 U.S.C.**

19   **§ 233(*l*)(2) are Moot**

20         Under the Federally Supported Health Centers Assistance Act, health centers

21   that are "deemed" to be United States Public Health Service ("PHS") employees by the

22   Department of Health and Human Services ("HHS") are entitled to immunity from any

23   civil action or proceeding resulting from their performance or failure to perform

24   medical or related functions within the scope of their employment.  *See* 42 U.S.C.

25   §§ 233(a), (g), (h).  When section 233 immunity applies, the United States is

26   substituted as the defendant and the action proceeds as one brought under the

27   Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680.  *See* 42 U.S.C. § 233(a).

28   However, the FTCA's applicability is not automatic.  Instead, U.S. Attorneys–in

1    accordance with the Attorney General's delegation of such duties–evaluate when a

2    lawsuit's alleged actions or omissions trigger the FTCA's coverage.  42 U.S.C.

3    § 233(b)–(*l*).  If a healthcare provider is sued in state court, there are two avenues for

4    the case's removal to federal court: (1) the Attorney General can remove the case after

5    certifying the defendant is a deemed PHS employee whose actions or omissions fall

6    within the FTCA's purview; or (2) the healthcare provider can remove the case on its

7    own if the Attorney General fails to appear within 15 days of receiving notice of the

8    case.  *See id.* §§ 233(*l*)(1)–(2).  The timing requirements in section 233(*l*) are mandatory

9    and, as a result, courts have remanded actions in which a defendant failed to comply

10   with the timing requirements.  *See, e.g., Sherman v. Sinha*, 843 F. App'x 870, 873 (9th

11   Cir. 2021) (remanding case because the defendant "sought to remove the civil action

12   to the district court before expiration the time set for the Attorney General to

13   determine whether she would be deemed a federal officer").

14          Here, Defendant removed this action on August 22, 2024, under section

15   233(*l*)(2).  However, the Attorney General was not notified of the action until August

16   29, 2024, and appeared in the state court action on September 5, 2024.  (*See* LaComb

17   Decl., Ex. A (ECF No. 8-2).)  Thus, removal under section 233(*l*)(2) was premature as

18   Defendant removed the action before the Attorney General was notified and the

19   Attorney General appeared within 15 days.  *See, e.g., K.C. v. Cal. Hosp. Med. Ctr.*, No.

20   2:18-cv-06619-RGK-ASx, 2018 WL 5906057, at *5 (C.D. Cal. Nov. 8, 2018) (removal

21   improper because defendant did not wait 15 days from notifying the Attorney General

22   to remove the action and the Attorney General appeared within 15 days).

23          The Court finds the Ninth Circuit's recent decision in *Blumberger* helpful in

24   resolving whether the premature removal requires remand.  As the Ninth Circuit

25   clarified in *Blumberger*, when the Attorney General appears in state court within the

26   15-day deadline prescribed under section 233(*l*)(1), the Attorney General is at that

27   moment obligated to "advise the state court whether the employee was deemed a

28   PHS employee by the [HHS] Secretary for the relevant time period and was providing

1   the categories of medical services for which he was deemed." 115 F.4th at 1129. The

2   Ninth Circuit called this initial report "a simple up-down certification" that "requires

3   access to only two documents—the deeming notice issued by HHS and the complaint."

4   *Id.* at 1133.

5          The Ninth Circuit contrasted this deeming decision, which encompasses the

6   HHS Secretary's ex-ante decision to treat certain entities as PHS employees, with the

7   Attorney General's more robust ex-post coverage decision, under which the Attorney

8   General determines if the PHS employee was acting within the scope of his

9   employment "at the time of the incident out of which the suit arose." *Id.* at 1127–29

10  (quoting 42 U.S.C. § 233(C)). The court held that, if the HHS Secretary has given a

11  defendant deemed status, then the Attorney General is "obligated to advise the state

12  court in the affirmative" of that deemed status and "remove the case to federal court."

13  *Id.* at 1139. Once the case is removed, the Attorney General, defendant, or plaintiff

14  has 30 days to move to remand the case "on the basis that [defendant] was not acting

15  within the scope of his employment." *Id.* The Ninth Circuit has further instructed that,

16  under 42 U.S.C. § 233(c) the "district court should, upon a timely motion to remand,

17  hold a hearing to determine whether the case so removed is one in which a remedy

18  by suit within the meaning of subsection (a) . . . is not available against the United

19  States," during which the Attorney General "is free to contest whether [the defendant]

20  was acting within the scope of his employment." *Id.* at 1140.

21         Applying *Blumberger*'s reasoning here, the Court finds that Defendant's

22  procedural error in removing this action too soon under section 233(*l*)(2) is moot

23  because the Attorney General was required to remove the action upon appearing in

24  the state court action under section 233(*l*)(1) and certifying that the Defendant was a

25  deemed employee of the PHS. (*See* LaComb Decl., Ex. A.) Thus, had Defendant not

26  already removed the case, the U.S. Attorney would have been obligated to remove

27  the case to federal court. Given this conclusion, the Court finds that Defendant's early

28  removal is ultimately moot.

1    That said, remand may still be appropriate under 42 U.S.C. § 233(c), which

2    provides that a district court may remand a matter if it "determine[s] on a hearing on a

3    motion to remand held before a trial on the merit that the case so removed is one in

4    which a remedy by suit within the meaning of [42 U.S.C. § 233(a)] of this section is not

5    available against the United States . . . ."  Since its initial appearance in the state court

6    action, the U.S. Attorney has performed their ex-post coverage determination and has

7    determined that "Plaintiffs' Complaint does not arise out of any conduct by WellSpace

8    for which § 233(a) makes the remedy against the United States exclusive" such that

9    remand is appropriate.  (*See* Frueh Decl., Ex 3 (ECF No. 22-4); *see also* ECF No. 22 at

10    10–15.)  Given this ex-post coverage determination, the Court will order the Parties

11    and U.S. Attorney to meet and confer within 14 days and advise the Court if they

12    agree that remand is warranted under section 233(c).  If the Parties disagree, the

13    Court will schedule a hearing to determine the appropriate forum for Plaintiffs' claims.

**CONCLUSION**

15    Accordingly, IT IS HEREBY ORDERED the Parties and U.S. Attorney shall meet

16    and confer and thereafter file a joint status report within fourteen (14) days advising

17    the Court as to the necessity of holding a hearing under 42 U.S.C. § 233(c).  The Court

18    will stay any ruling on Plaintiffs' Motion to Remand (ECF No. 8) in the interim.

19

20    IT IS SO ORDERED.

21    Dated:    **February 14, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

25    DJC4 – Mixon24cv2290.MotRemand

13